ROBERT M. WAY AND KATHARINE B. WAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Way v. Commissioner
Docket Nos. 8680-79, 14332-79.
United States Tax Court
T.C. Memo 1980-202; 1980 Tax Ct. Memo LEXIS 382; 40 T.C.M. (CCH) 466; T.C.M. (RIA) 80202; June 16, 1980, Filed *382 Donna E. Baker, for the petitioners. Russell K. Stewart, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: These consolidated cases were heard on respondent's motion for judgment on the pleadings at Philadelphia, Pennsylvania. Respondent filed a memorandum brief in support of his motion and petitioners filed a memorandum in opposition thereto, asserting various constitutional impediments. The pertinent facts are set forth below. In separate statutory notices dated August 13, 1979, and March 30, 1979, respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1976 and 1977 in the amounts of $4,807.30 and $5,376.63, respectively, and an addition to tax under section 6653(a) [1] for the year 1976 in the amount of $240.36. Petitioners, who resided in Kennett Square, Pennsylvania, when they filed their petitions in these cases, claimed "war tax credits" of $4,807.30 and $5,376.63 on their Federal income tax returns for 1976 and 1977. Respondent disallowed the claimed credits. In *383 their petitions the petitioners allege the following errors: (1) The Commissioner of Internal Revenue is attempting to collect that portion of our Federal Income Tax that would be used to support the military part of our government. (2) The Commissioner of Internal Revenue does not provide a channel for that same portion of our Federal Income Tax that would permit us to follow our religious beliefs and practices by using that tax to support problem solving techniques of a nonviolent nature. The facts upon which they rely are stated as follows: (1) Our religious principles hold all life sacred, thus we can not use killing or the threat thereof as a means of problem solving. (2) Since to kill someone is wrong, using one's mone to pay someone else to do the killing is just as wrong. (3) The Commissioner of Internal Revenue acted unconstitutionally when attempting to collect that portion of our Federal Income Tax that pays the military to threaten and/or to kill as a means of problem solving, as this infringes on our religious beliefs and practices. Using our tax money to prepare for killing prevents our free exercise of religion. (4) Our government has already recognized *384 religious beliefs in times of military conscription by permitting alternative service by those opposed to killing. On this basis, an alternative use of our tax money is permitted. Until the Commissioner of Internal Revenue provides a suitable program that uses that same portion of the Federal Income Tax for peace producing end, we will continue to contribute that same portion of our Federal Income Tax to agencies that work for peace using nonviolent methods. The contentions advanced by the petitioners in support of their claimed "war tax credits" have been previously considered and rejected by this Court and others. First Amendment argument were answered in United States v. Malinowski,472 F.2d 850, 857 (3d Cir. 1973); Russell v. Commissioner,60 T.C. 942, 946-947 (1973); Muste v. Commissioner,35 T.C. 913, 918-919 (1961). The First Amendment guarantee of religious freedom does not provide religiously motivated persons immunity from the payment of Federal income taxes used in part for war or preparation for war because the payment of such taxes does not directly restrict the free exercise of their religion. Autenrieth v. Cullen,418 F.2d 586 (9th Cir. 1969), *385 certiorari denied 397 U.S. 1036 (1970). At the hearing on respondent's motion the main thrust of petitioners' position was that the Ninth Amendment to the Constitution of the United States recognizes the "right of conscience" asserted by them and "places a limitation on the taxing power" of the Government. We thoroughly considered and rejected similar arguments in our recent opinion in Tingle v. Commissioner,73 T.C. No. 65 (February 7, 1980). We concluded in that case that the Ninth Amendment was not intended to abridge the specific power of Congress to lay and collect taxes from whatever source derived and does not protect acts of conscience which contest the appropriation of the revenue. The statements concerning the Ninth Amendment which are contained in the concurring opinion of Justice Goldberg in Griswold v. Connecticut,381 U.S. 479, 487 (1965), do not alter our conclusion. We think the Tingle opinion is dispositive of the Ninth Amendment contentions made by the petitioners here. Finally, the petitioners urge that this Court has a duty to uphold their claim "where reasonable alternatives are available to the government" *386 which would accomplish respondent's objectives and protect the petitioners' fundamental rights. They refer specifically to the World Peace Tax Fund bill (H.R. 4897), now pending in Congress. We have considered and rejected similar contentions in previous cases. See Egnal v. Commissioner,65 T.C. 255, 263 (1975) (alleged partial tax payment by petitioners to the PhiladelphiaWar Tax Resistance Alternative Fund did not relieve them of their income tax obligation); Russell v. Commissioner,supra at 947 (alleged payment of an alternative tax to the community had no bearing on the tax liability of the petitioner); Tingle v. Commissioner,supra (alleged distribution to various charities and to a "war tax resistance life fund" of a portion of petitioner's income taxes which would be appropriated to the military does not relieve him of his tax liability). Accordingly, the respondent's motion for judgment on the pleadings will be granted since there is no genuine issue as to any material fact. An appropriate order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩