BRUCE B. GRAVES and RUTH K. GRAVES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Graves v. Commissioner
Docket No. 5057-75
United States Tax Court
T.C. Memo 1976-353; 1976 Tax Ct. Memo LEXIS 50; 35 T.C.M. (CCH) 1607; T.C.M. (RIA) 760353; November 22, 1976, Filed Bruce B. Graves, pro se. Peter M. Ritteman, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: This motion for judgment on the pleadings was assigned to and heard by Special Trial Judge John H. Sacks. The Court agrees with and adopts his opinion which is set forth below. [1]
OPINION OF THE SPECIAL TRIAL JUDGE SACKS, Special Trial Judge: This case is presently before the Court on respondent's motion for judgment on the pleadings *51 filed January 20, 1976, pursuant to Rule 120, Tax Court Rules of Practice and Procedure.
Respondent determined a deficiency in petitioners' joint Federal income tax for the taxable year 1973 in the amount of $4,051. [2] The underlying question for determination is whether petitioners are entitled to a fifty percent "war tax credit" for the taxable year at issue on the ground that payment of such a tax would compel them to violate their consciences, religious beliefs, and moral convictions. [3]
*52 Petitioners reside in Ypsilanti, Michigan. They have long been active Quakers, and they adhere devotedly to the principles of total nonviolence espoused by the Society of Friends. Petitioner Bruce B. Graves' status as a "conscientious objector" for purposes of the Selective Service system has been recognized officially since 1952. On their joint Federal income tax return for 1973, petitioners claimed a war tax credit of $4,051, which credit was disallowed upon audit by respondent as having no statutory basis in the Internal Revenue Code of 1954. [4] With that determination, we are constrained to agree. [5]
Petitioners' primary contention herein is that a forcible requirement to pay Federal taxes supportive of military activity would violate their pacifist religious beliefs in contravention of their right *53 to the free exercise of such beliefs as secured to them by the First Amendment to the United States Constitution. [6] Without question, these are serious charges, and the gravity of petitioners' contentions is underscored by the fact that they have been made by individuals whose religious sincerity and devotion to principle can be neither doubted nor gainsaid. Nevertheless, they are charges which have been considered at great length and with equal devotion to principle by this Court on several prior occasions. See Lorna H. Scheide,supra,Susan Jo Russell,60 T.C. 942 (1973); and Abraham J. Muste,35 T.C. 913 (1961). As early as 1961, this Court in Muste,supra, stated (at 918, 919) that, "* * * within the intendment of the first amendment, the Internal *54 Revenue Code, in imposing the income tax and requiring the * * * payment of tax, is not to be considered as restricting an individual's free exercise of his religion." Although a tax under somecircumstances may so contravene the guarantee of the first amendment so as to be unconstitutional, [7] a taxing statute is not contrary to the provisions of the first amendment unless it directly restricts the free exercise by an individual of his religion. Thus, in Muste, we said (at 919): * * * [The] Constitution does not relieve a pacifist or conscientious objector of the dutytopaytaxes, even though they may be used for war or for preparation for defense. [Emphasis supplied.] [8]
*55 Similar views have been expressed emphatically in other court decisions wherein taxpayers made the same contentions with respect to the issue of the free exercise of religion as are made here. In Autenrieth v. Cullen,418 F.2d 586 (9th Cir. 1969), cert. denied 397 U.S. 1036 (1970), the Ninth Circuit stated, in regard to such views: * * * [We] hold that nothing in the Constitution prohibits the Congress from levying a tax upon all persons, regardless of religion, for support of the general government. The fact that some persons may object, on religious grounds, to some of the things that the government does is not a basis upon which they can claim a constitutional right not to pay a part of the tax. Kalish * * * [v. United States,411 F.2d 606 (9th Cir. 1969), cert. denied 396 U.S. 835 (1969)], is analogous. The Income Tax Act does not 'aid one religion, aid all religions, or prefer one religion over another.' Nor does it punish anyone 'for entertaining or professing religious beliefs or disbeliefs.' (Mr. Justice Black, in Everson v. Board of Education, 1947, 330 U.S. 1, 15-16 * * *) It taxes *56 plaintiffs like all others, because they are citizens or residents who have taxable income. On matters religious, it is neutral. If every citizen could refuse to pay all or part of his taxes because he disapproved of the government's use of the money, on religious grounds, the ability of the government to function could be impaired or even destroyed. See, for example, Crowe v. Commissioner * * *, 8 Cir., 1968, 396 F.2d 766, where a taxpayer declined to pay his income tax because he objected to being made 'to contribute to the welfare of people who made no effort to support themselves.' There are few, if any, governmental activities to which some person or group might not object on religious grounds. [418 F.2d at 588, 589]
Despite the overwhelming weight of prior contrary authority, petitioners adhere to their position, and in support thereof, they cite American Friends ServiceCommittee v. United States,368 F. Supp. 1176 (E.D. Pa. 1973) revd. 419 U.S. 7 (1974). Their reliance, however, on this case is misplaced. American Friends Service Committee, insofar as it is pertinent to this proceeding, involved an action *57 for injunctive relief by two Quakers challenging the application of the withholding method of tax collection to them. Although the District Court did hold that the withholding method was unconstitutional as applied, the Supreme Court reversed upon the ground that the Anti-Injunction Act, 26 U.S.C. Section 7421(a), barred petitioners' claim. For reasons that should be clear, petitioners' reliance on Justice Douglas' lone dissenting opinion is also without merit. Therefore, although we do not doubt the sincerity of petitioners' beliefs, it is the function of this Court to interpret the law as made by Congress within the decisional parameters of both this Court and other courts. As was stated in Farmer v. Rountree,149 F. Supp. 327 (D. Tenn. 1956), affd. per curiam 252 F.2d 490 (6th Cir. 1958), cert. denied 357 U.S. 906 (1958): To grant taxpayers the relief they seek, the Court would be required to substitute its judgment for that of the other two branches of the Government by declaring that the foreign and military policies of the nation were in reality for illegal and aggressive war and not for *58 the legitimate purpose of national security or for the preservation of the essential interests of the United States. The judiciary not only does not have the proper criteria or the technical competence to make such determinations, but [also] it is without the means of obtaining the varied and complete facts which would be required to draw a conclusion. * * * [149 F. Supp. at 329] Thus, however sympathetic we may be to the arguments made by petitioners, the legal theories underlying them find no support in the opinions of this Court. Accordingly, our only recourse is to grant respondent's motion for judgment on the pleadings. An appropriate order and decision will be entered. Footnotes
1. Since this is a pre-trial motion for judgment on the pleadings and there is no genuine issue of material fact, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.
2. On their joint Federal income tax return for the year 1973, petitioners showed a gross tax liability of $8,102. This liability was shown as having been satisfied by withholding taxes in the amount of $5,560, and by a check, bearing a conditional endorsement, in the amount of $2,542. Petitioners claimed a war tax credit of fifty percent of the gross tax shown, and, accordingly, requested a refund in the amount of $4,051. Respondent then determined a deficiency against petitioners in the amount of $4,051 by measuring the difference between the tax liability as shown by petitioners (i.e., $4,051) and the tax liability as determined by respondent (i.e., $8,102). Respondent placed this $4,051 differential in a special credit balance account where it remains pending the outcome of this proceeding. If respondent is sustained, the credit balance will offset exactly the additional assessment. Alternatively, if petitioners' position is upheld, the credit balance will be refunded to them. In neither instance will petitioners have to remit any additional taxes↩ for 1973. 3. Petitioners specifically abjure a posture of objection to particular↩ wars, such as the recent involvment of the United States in Vietnam and Southeast Asia. Rather, their protestations are aimed at ALL war, and preparations therefor, since these "involve injuring or killing human beings."
4. All Code references herein are to the Internal Revenue Code of 1954, as amended. ↩
5. In making our determination in this case, we do not find it necessary to reach the "standing" question, which has been addressed on other occasions by this Court. See Lorna H. Scheide,65 T.C. 455 (1975) and Robert L. Anthony,66 T.C. 367↩ (1976).
6. As an ancillary contention, petitioners also argue that the payment of taxes such as are here at issue would constitute criminal complicity within the purview of those principles laid down by the International Military Tribunal at Nuremberg, Germany. The validity of this argument was rejected in John David Egnal,65 T.C. 255↩ (1975).
7. Murdock v. Pennsylvania,319 U.S. 105 (1943). Murdock involved the validity of a municipal ordinance requiring religious colporteurs to pay a license tax as a condition to the pursuit of their activities. The Court, per Douglas, J., wrote that, "* * * [the flat license tax] restrains in advance those constitutional liberties of press and religion and inevitably tends to suppress their exercise." Murdock,supra↩, at 114. The Federal income tax herein does not present this problem of an impermissible prior restraint. 8. Petitioners, in attempting to distinguish Muste, premise their argument upon a assumption analagous to that utilized by petitioner in Muste. This assumption is that the Constitutionitself is the source for the right of a pacifist or conscientious objector to be safeguarded from a requirement of military service. That this assumption is erroneous was pointed out by the Court in Muste, for it is well established that no man has a Constitutional right to be free from call to military service and it is only by virtue of actsofCongress that conscientious objectors are exempt in whole or in part from military service. The fallacy of petitioners' premise is further illustrated by the leading case on conscientious objection, United States v. Seeger,380 U.S. 163 (1965). In Seeger, which petitioners cite in support of their claim, the Supreme Court, in a unanimous decision, expressly recognized the statutory underpinnings of conscientious objection, by recounting the history of legislative action in connection therewith from colonial times through World War II. (See Seeger↩ at 169-173.)