JOHN A. DONAGHY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Donaghy v. Commissioner
Docket No. 8443-79.
United States Tax Court
T.C. Memo 1980-580; 1980 Tax Ct. Memo LEXIS 9; 41 T.C.M. (CCH) 668; T.C.M. (RIA) 80580; December 30, 1980
*9 John A. Donaghy, pro se. Greely S. Curtis, Jr., and Carolyn Boyer, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of conducting the hearing and ruling on respondent's motion for judgment on the pleadings filed herein. After a review of the record, we agree with and adopt his opinion which is set forth below. [1]
OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: This case is presently before the Court on respondent's motion for judgment on the pleadings filed on January 2, 1980, pursuant to Rule 120, Tax Court Rules of Practice and Procedure. *10 [2]
Respondent, in his notice of deficiency issued to petitioner on March 22, 1979, determined a deficiency in petitioner's Federal income tax for the taxable calendar year 1977 in the amount of $ 319.40. Petitioner's address on the date he filed his petition herein was Box 1427, Scranton, Pennsylvania. He filed a 1977 Federal income tax return with the Internal Revenue service. On June 18, 1979, petitioner filed an imperfect petition. The Court by order dated June 21, 1979, directed that he file a proper amended petition on or before August 21, 1979, which petitioner did on July 5, 1979, and wherein, at paragraph 4 thereof he asserts-- $ 319.40 represents a credit for Federal funding of war and preparation for war. (1) As a conscientious objector to war in all forms, I cannot willingly pay for war. I believe this right to conscientious objection to war taxes is guaranteed by national and international law. (2) Furthermore, inasmuch as U.S. foreign and military policy is in violation of national and international law, I cannot pay taxes for illegal and immoral purposes lest I be *11 held accountable for complicity in "crimes against humanity". Therefore, I cannot in good conscience willingly pay that 36% of my tax for 1977 ($ 319.40) which goes for war, though I would pay such if assured that none of my tax money is used for war or preparation for war. [3]
In filing his amended petition a form petition was used by petitioner which is normally used for small tax cases. Hence, the foregoing quoted language comprises in full the "errors" alleged as to respondent's deficiency determination and the "facts" to sustain the allegations of error. On September 10, 1979, respondent filed his answer to the amended petition wherein at paragraph 4 he denied the allegations of paragraph 4 of the amended petition. Thus, the pleadings are closed and respondent has properly invoked the judgment on the pleadings procedure. Rules 38 and 120. In justification of his claimed credit, *12 petitioner presented, in his brief and at the hearing, an elaborate argument in an attempt to convince the Court that to compel him to pay taxes for war would constitute forcing him to violate his conscience, religious training and beliefs in contravention as his rights guaranteed by the First, Fifth, and Ninth Amendments to the Constitution of the United States. While we do not question petitioner's sincerity in bringing his case to this Court, we cannot offer him any relief in view of well established precedents. For more than 20 years, in a long and undeviating line of cases, this Court and others have disallowed deductions or credits taken by taxpayers for a portion of their taxes which they estimated to be attributable to military expenditures and to which they objected because of their religious, moral, and ethical objections to war and because of their claimed "rights" under various constitutional provisions and amendments thereto, the Nuremberg Principles, national and international law, and numerous international agreements and treaties. Greenberg v. Commissioner, 73 T.C. 806 (1980); Lull v. Commissioner, 602 F.2d 1166 (4th Cir. 1979), *13 affg. per curiam Lull v. Commissioner and Herby v. Commissioner, memorandum opinions of this Court, cert. denied 444 U.S. 1014 (1980); First v. Commissioner, 547 F.2d 45 (7th Cir. 1976), affg. per curiam a memorandum opinion of this Court; Autenrieth v. Cullen, 418 F.2d 586 (9th Cir. 1969), cert. denied 397 U.S. 1036 (1970); Kalish v. United States, 411 F.2d 606 (9th Cir.1969), cert. denied 396 U.S. 835 (1969); Farmer v. Rountree, 149 F. Supp. 327 (M.D. Tenn. 1956), affd. per curiam 252 F.2d 490 (6th Cir. 1958), cert. denied 357 U.S. 906 (1958); Anthony v. Commissioner, 66 T.C. 367 (1976); Scheide v. Commissioner, 65 T.C. 455 (1975); Egnal v. Commissioner, 65 T.C. 255 (1975); Russell v. Commissioner, 60 T.C. 942 (1973); Muste v. Commissioner, 35 T.C. 913 (1961). [4]
*14 This year for the first time we considered and rejected a taxpayer's refusal to pay taxes based on the claim that the Ninth Amendment[5] preserved one's right to do so. Tingle v. Commissioner, 73 T.C. 816 (1980). [6] We again reaffirm our holding in Tingle, which clearly controls petitioner's Ninth Amendment argument herein. Petitioner "notes carefully" at several points in his oral argument and in his brief that he does not deny the government's right to tax and he is willing to pay the disputed deficiency provided respondent will guarantee that such tax will not be used for war or war preparation. [7] The short answer to this contention is found in Tingle v. Commissioner, supra at 820-821, where we stated-- *15 The petitioner's claim of conscience runs into direct conflict with the express power to leavy and collect taxes. Article I, section 8, of the Constitution specifically provides that the Congress shall have power to lay and collect taxes, to provide for the common defense and general welfare of the United States, and to provide for and maintain an Army and a Navy. This article and the 16th Amendment to the Constitution empower the Congress to lay and collect taxes on incomes from whatever source derived. In exercising such authority, Congress has imposed a tax on incomes and has made no exceptions for those persons who have moral or conscientious objections to the use of the taxes so collected. * * * Finally, petitioner seeks to present proof of the factual allegations made in his amended petition, e.g., to put on "evidence" of U.S. foreign and military policy to support his allegations of violations of international law and to submit "materials" (arguments) which he tendered to respondent's audit agents prior to the issuance of the notice of deficiency upon which his petition is predicated. We addressed a similar plea in Egnal v. Commissioner, supra at 263, *16 which is equally applicable here, where we said: They are entitled to that opportunity only if it could result in a redetermination of the deficiencies found by respondent. In these cases, it would be useless for us to hear the proffered evidence, because we have concluded that the legal theories relied upon by petitioners to reduce their taxes are erroneous. [8]
The record is crystal clear that there is no genuine issue as to any material fact. In such circumstances, Rule 120(a) permits this Court to render a decision as a matter of law.Since respondent has demonstrated that he is entitled to prevail as a matter of law, his motion for judgment on the pleadings filed on January 2, 1980, will be granted. An appropriate order and decision will be entered. Footnotes
1. Since this is a pretrial motion and there is no genuine issue of material fact, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that Rule. The parties were heard in oral argument at Washington, D.C., on February 20, 1980, at which time petitioner filed a 37-page brief in support of his positions.
2. All rule references herein are to the Tax Court Rules of Practice and Procedure.↩
3. The claimed credit, which was disallowed by respondent and which forms the basis of respondent's determined deficiency, was determined by petitioner "on the basis of the fact that 36% of the Fiscal Year 1979 unrestricted federal budget was earmarked for federal military expenditures."↩
4. See also, DiDomizio v. Commissioner, T.C. Memo. 1978-160, where a Fifth Amendment argument was rejected; Hecht v. Commissioner, T.C. Memo. 1976-2↩, where a Fifth Amendmnt and other claims were rejected as they lacked standing.
5. The Ninth Amendment↩ reads as follows: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." 6. See also Marx v. Commissioner, T.C. Memo. 1980-405, which followed Tingle v. Commissioner, 73 T.C. 816 (1980), in rejecting a Ninth Amendment↩ plea.
7. See Leatherman v. Commissioner, T.C. Memo. 1975-41↩, where a similar claim was rejected.
8. Moreover, this Court has consistently refused to look behind a notice of deficiency to examine respondent's motives for the administrative policy or procedure involved in making the determination. Greenberg's Express, Inc., v. Commissioner, 62 T.C. 324, 327 (1974). See also Walter v. Commissioner, T.C. Memo. 1980-31↩.